# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MICHAEL ASHER, | |
| Movant, | |
| v. | 1:09-cr-414-WSD-AJB |
| UNITED STATES OF AMERICA, | 1:15-cv-2782-WSD-AJB |
| Respondent. | |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's Final Report and Recommendation [159.1] ("Final R&R"), recommending denial of Michael Asher's ("Movant") Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [152] ("Motion to Vacate"). Also before the Court are Movant's Objections to Magistrate Judge's Report and Recommendation [169] ("Objections").

I.  BACKGROUND

On December 1, 2008, a Special Agent of the Federal Bureau of Investigation ("FBI") used a file sharing program to download more than one

hundred images of child pornography from the user "Mangaman1999." [1] United States v. Asher, 564 F. App'x 963, 966 (11th Cir. May 6, 2014) (affirming conviction).  The internet protocol ("IP") address assigned to "Mangaman1999" was associated with Movant's home address in Conyers, Georgia.  Id.  At the time of the download, Movant was logged into the virtual private network ("VPN") of his employer, AT&T, with his username, personal identification number, and employer-issued key fob.  Id.

Upon searching Movant's home, FBI agents located and seized eight computers.  Id.  FBI examiners uncovered more than 1500 images and 80 videos of child pornography on two computers, which were registered to Movant and found in his home office.  Id.  The examiners discovered that Movant sent a work-related email from one of these computers within a half hour of child pornography being downloaded.  Id.  FBI examiners also discovered a number of file names identical to those located on the first two computers on a third computer, but not the files themselves.  Id.  The examiners found "Eraser" software designed to delete information from a computer's hard drive.  Id.  The examiners did not uncover

---

[1] The parties do not object to the facts as set out in the Final R&R.  In the absence of an objection and the Court finding no plain error in them, the facts set out in the Final R&R are adopted by the Court.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

child pornography on the computers found elsewhere in Movant's home, including his 17-year-old stepson's computer. Id.

On August 24, 2010, a grand jury for the Northern District of Georgia indicted Movant on one count of child pornography distribution occurring on or about December 1, 2008; one count of child pornography distribution between approximately September 21 through October 13, 2007; one count of child pornography receipt by at least February 19, 2009; and one count of child pornography possession by at least February 19, 2009. ([53]). Movant pleaded not guilty, and on December 6, 2010, proceeded to trial represented by Jerome Froelich ("Mr. Froelich"). ([81]). On January 30, 2013, the Court imposed a sentence of 155 months imprisonment. ([135]). On October 27, 2011, Movant filed a motion for new trial, represented by Mildred Dunn, and on October 17, 2012, the Court denied the motion. ([119]; [129]).

Movant appealed to the Eleventh Circuit Court of Appeals, and, on May 6, 2014, the Eleventh Circuit affirmed the judgment against him. Asher, 564 F. App'x at 973. In affirming Movant's conviction, the Eleventh Circuit stated:

> The government's evidence showed that Agent Donahue downloaded 174 files of child pornography from the IP address assigned to [Movant's] residence; that three computers registered to [Movant] and located in his home office, including his password-protected work laptop, contained files names or actual files corresponding to those downloaded by Agent Donahue; that [Movant] was signed into his

> employer's VPN network at the time of the undercover GigaTribe session; that [Movant] sent a work-related email from one of those three computers within a half hour of child pornography being downloaded onto it; and that no files or names of files relating to child pornography were found on his stepson's computer. While [Movant] presented his own expert testimony that someone using his stepson's computer could wirelessly access and download files onto QAT03 and QAT04, that testimony does not render the government's evidence of guilt any less substantial, particularly in light of the incriminating file names found on his password-protected work laptop.

Id. at 970. On August 5, 2015, Movant, proceeding *pro se*, filed his Motion to Vacate asserting two grounds for collateral relief: (1) ineffective assistance of pre-trial counsel for failure to negotiate a plea deal and fully inform Movant of the benefit of pleading guilty and (2) ineffective assistance of trial counsel. ([152] at 5-6). On April 15, 2016, the Magistrate Judge issued his Final R&R recommending the Court deny Movant's Motion to Vacate. On June 30, 2016, Movant filed his Reply to Magistrate's Report [169] ("Objections"). For the reasons stated below, the Court adopts the Magistrate Judge's Final R&R and overrules Movant's Objections.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 2255 Motion

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate his sentence "upon the ground[s] that the sentence was imposed in violation of the

Constitution or laws of the United States, [] that the court was without jurisdiction to impose such sentence, [] that the sentence was in excess of the maximum authorized by law, or [that the sentence] is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). Collateral relief, however, is limited. It is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The movant bears the burden of persuasion, which "is supposed to be a heavy one." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

Matters decided on direct appeal cannot be re-litigated under § 2255, and matters that could have been raised on direct appeal, but were not, are generally foreclosed. Hidalgo v. United States, 138 F. App'x 290, 291 (11th Cir. June 29, 2005) (citing Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004). Thus, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988) (internal quotation marks omitted). A constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.

5

Massaro v. United States, 538 U.S. 500, 505-09 (2003). "An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255).

Claims for ineffective assistance of counsel—like those asserted by Movant here—are evaluated under the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The first part of the inquiry requires the court to determine whether counsel's performance fell "below an objective standard of reasonableness." Id. at 688. The court must then assess whether counsel's performance prejudiced the defendant. Id. In other words, the court must ask whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Lynn v. United States, 365 F.3d 1225, 1235 n.21 (11th Cir. 2004) (noting that "cause and actual prejudice standard" for § 2255 motion "mirrors the standard used to evaluate collateral attacks on state convictions"); Reece v. United States, 119 F.3d 1462, 1467 (11th Cir. 1997) ("'[A]ctual prejudice' is 'not merely that the errors at [the defendant's] trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

6

disadvantage, infecting his entire trial with error of constitutional dimensions.'" (quoting Frady, 456 U.S. at 170 )). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

    B.    <u>Magistrate Judge's Report and Recommendation</u>

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam). Where, as here, a party has filed objections, the Court conducts a *de novo* review.

## III. DISCUSSION

Movant argues for collateral relief on the following grounds: (1) counsel's pre-trial performance failed to meet the constitutional standard for effective assistance of counsel and (2) counsel's preparation and performance at trial did not meet the minimum standard of effective assistance of counsel. ([152] at 15-25). The Court addresses each in turn below.

### A. Pre-Trial Assistance

Movant first argues that his counsel was ineffective for failing to inform Movant of the benefit of pleading guilty and negotiate a pre-trial plea offer. Movant asserts that, approximately six months after his arrest, his attorney, Mr. Froelich, forwarded him copies of several letters from the prosecution, including one in which Movant was invited to discuss a plea deal. ([152] at 15). Movant claims that Mr. Froelich did not make Movant aware of this fact nor did he discuss the possibility of plea bargaining with Movant. (Id.). In their next meeting, Movant raised the possibility of a plea deal with Mr. Froelich, but Mr. Froelich explained that a judge likely would not accept any plea deal because of the nature of the case. (Id. at 15-16). Movant states that the next discussion of a plea deal occurred three to four weeks prior to trial, at which time Mr. Froelich "abruptly asked [Movant] if he would consider a plea deal." (Id. at 16).

8

According to Movant, Mr. Froelich informed Movant that he "might be able to work something" and asked what terms would be acceptable and agreed to seek a deal. (Id. at 17). In the end, Mr. Froelich informed Movant he "couldn't get anything." (Id.). Movant states that he is unaware if a deal ever existed, or when, if ever, Mr. Froelich sought one, and that he believes he was "severely prejudiced" by his counsel's unreasonable delay in seeking a plea deal. (Id.).

Respondent argues that Movant's claim fails because he does not identify a proposed plea agreement and because there was no plea agreement reached. ([154] at 15). Respondent also notes that Movant cannot establish he was prejudiced because he continues to assert he is innocent by placing the blame on his 17-year-old stepson, and he does not state that he would have been prepared to plead guilty and detail his crimes in open court. (Id.).

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, 566 U.S. 134, (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution . . . ." Id. at 1408. Counsel, however, is not deficient for failing to inform a defendant of a non-existent plea offer. United States v. Butler, 118 F. App'x 371, 373 (10th Cir. 2004) ("Failure to inform him of a non-existent plea offer cannot form a basis for an inadequate assistance of

9

counsel claim."). Additionally, "counsel cannot force the state to plea bargain[,]" and counsel does not perform deficiently by failing to plea bargain when the state has not offered a plea bargain. Zamora v. Dugger, 834 F.2d 956, 960 (11th Cir. 1987).

To demonstrate prejudice, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985)) (internal quotation marks omitted). A movant fails to show prejudice when he does not allege that "he would have accepted a plea of guilt and would not have insisted on going to trial." Rosin v. United States, 786 F.3d 873, 878 (11th Cir.). A defendant must also "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]" Frye, 132 S. Ct. at 1409. To show that counsel was ineffective for failing to pursue a plea bargain, a defendant "must show that the prosecutor would have offered a plea, that the court would have approved it, and that he would have accepted it." Williams v. Crosby, No. 8:02-CV-965-T-30MAP, 2007 WL 1724944, at *14 (M.D. Fla. June 13, 2007); see also Adames v. United States, No. 6:10-cv-1066- Orl-28GJK, 2012 WL 939022, at *1 (M.D. Fla. Mar.20,

2012) ("The failure to pursue a plea bargain does not demonstrate ineffective assistance of counsel, particularly when there is no suggestion that the prosecutor would have offered one."). The movant must show finally that, had all these things occurred, "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012).

The Court finds Movant has not shown that his counsel was ineffective for failing to inform Movant of the benefits of pleading guilty or negotiate a plea. First, there is simply not enough evidence in the record to permit the Court to conclude that, but for his counsel's errors, Movant would have pled guilty to some unknown and unsubstantiated offer, would not have insisted on going to trial, that the plea would not have been canceled by the prosecution, and that the district court would have accepted the plea. There is evidence in the record, as confirmed by Movant, that Movant's counsel discussed with Movant whether a plea deal was a possibility early on and determined that it was not due to the nature of the case. Movant, moreover, continues to place blame on his stepson for the receipt and distribution of the child pornography, which supports that he was not willing to accept guilt for the specific criminal acts detailed in his indictment because he did not commit them. There is also no suggestion that a formal plea offer was ever

presented by the Government to Movant's counsel, or that Movant's counsel failed to communicate one to Movant.

To the extent Movant argues that his counsel was ineffective because he did not effectively negotiate with the Government or prod the Government sufficiently enough to extend a formal offer, Movant's argument fails. Movant's counsel was not required to inform him of a "non-existent plea offer" nor was Movant's counsel defective for failing to force the Government to offer a formal plea bargain. Zamora, 834 F.2d at 960; see also Missouri, 566 U.S. at 145 (noting that "[b]argaining is, by its nature, defined to a substantial degree by personal style" and "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process[]"). The Court finds Movant's counsel was not ineffective for failing to communicate or negotiate a plea deal on his behalf.

B. Trial Assistance

Movant next asserts eight claims of ineffective assistance of trial counsel, which can be grouped into the following three categories:

(1) Counsel's failure to adequately show that others had access to Movant's computers;

(2) Counsel's failure to present evidence favorable to Movant; and

(3) Counsel's failure to adequately incriminate his stepson or others. ([152] at 18-25).

Movant first contends that counsel failed to adequately show others had access to the computers containing child pornography by, for example, failing to introduce evidence that at least some passwords were left in plain sight or known by other household members, that the computers were used by the entire household, and that at least one computer was not key fob protected. ([152] at 18-25). Movant next alleges that counsel failed to present evidence favorable to Movant because he did not introduce evidence demonstrating Movant was a sophisticated computer user, that one of the computers did not in fact ever contain child pornography, that Movant called his home thirty minutes before an illegal download occurred, and that sending an email thirty minutes prior to an illegal download did not place Movant in the same room as the computer. (Id.). Movant argues lastly that his counsel failed to adequately shift responsibility to others, including his 17-year-old stepson, by failing to rebut the Government's closing argument that Movant's defense implausibly required his stepson be a ten-year-old super hacker at the time of the earliest crimes and that earliest large-scale downloads occurred in 2007, failing to introduce evidence of his stepson's delinquent behavior, and failing to sufficiently use defense witness James

13

Persinger's report to show pornography searches on at least one of the computers were done by a program utilized by Movant's stepson. (Id.).

The Court again applies the Strickland standard here—considering whether Movant has sufficiently established that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced Movant. Strickland, 466 U.S. at 960-92. Of particular importance to Movant's claims in this instance is the general rule that "a petitioner cannot satisfy the prejudice prong of the Strickland test with evidence that is merely cumulative of evidence already presented at trial." Rose v. McNeil, 634 F.3d 1224, 1243 (11th Cir. 2011). In essence, "evidence presented in postconviction proceedings is cumulative to or duplicative of that presented at trial when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury." Tanzi v. Sec'y, Fla. Dep't of Corr., 772 F.3d 644, 660 (11th Cir. 2014) (quoting Holsey v. Warden, 694 F.3d 1230, 1260-61 (11th Cir. 2012).

Upon a thorough review of the record in this case, including hundreds of pages of trial transcripts, the Court concludes that Movant's claim that his trial counsel was ineffective is without merit. It is apparent that all of the evidence and arguments that Movant claims his counsel failed to present at trial, and which Movant claims amounted to ineffective assistance of counsel under the Sixth

Amendment, were communicated in some way during trial, and it is, in short, cumulative of the abundant evidence that was admitted. That is, Movant is simply attempting to show that his counsel was ineffective because he could have told "a more detailed version of the same story [] at trial or provide[d] more or better examples or amplifie[d] the themes presented to the jury." Tanzi, 772 F.3d at 660.

For example, with respect to whether others had access to the computers, counsel in his opening statement informed the jury that Movant, the children, and his wife used the computers in Movant's upstairs home office, that it was an open room, and that everyone knew the computer passwords. ([104] at 189, 192). Counsel stated, "[Y]ou will see not only was he using it as an office, it was used as a junk room, and there were other things to indicate that the children and even his wife used those computers and kept things in that room. It was an open room." Id. Officer Cameron Roe testified that the home office contained books, tables, computers, and a musical keyboard. (Id. at 265-68). Philip Pascal, a technical staff member at AT&T, testified on cross-examination that employees could, and did, log on to a VPN session and leave it on until it automatically shut off twenty-two hours later. ([105] at 383-84). Defense witness James Persinger in fact testified that documents appearing to be school papers were found on at least one computer, including a paper with topics relating to "Changes in the

15

Environment" and "French Cont[e]rrevolution[.]" ([103] at 688-89, 711).

Movant's counsel, in his closing argument made the following statement:

> We showed you exactly that a lot of people – that these computers were open for a lot of time, for a long time, periods of time. One period it was open for – I think Mr. Persinger testified it was open for like a year and a half or two years where anybody could get on it. We showed access by other people it.

([107] at 47)

With regard to whether certain information favorable to Movant was introduced, defense witness Mr. Persinger testified about, for example, the existence of spelling errors in a September 11, 2007, chat and noted Movant's specialized knowledge in writing computer programs and encryption data. (See, e.g., [106] at 717-22, 775-76). Movant's counsel, during his closing argument, reiterated that Movant "is an educated guy" and asked whether it was reasonable to conclude that Movant would make the misspellings in the chats. ([107] at 56). And, finally, as for counsel's supposed failure to adequately incriminate his stepson, counsel introduced evidence that Movant's stepson had Japanese cartoon characters known as "manga" in his computer, that at least two computers were located in Movant's stepson's room at one time, and that many of the computers had music by Eminem and computer games. ([107] at 58). Movant's counsel in fact states: "So [Movant's stepson] is accessing the computers. Not only does he

16

have access to the room because he's right next to it and the computers are open, he has other access." (Id.).

Movant's contentions in his Objections that other, similar evidence would have been "more equivocal" or "direct" is unconvincing and ignores the applicable legal standard here. For example, while Movant acknowledges that the jury heard evidence that a VPN connection remained active when a home user "went to lunch or something," Movant nonetheless contends that his counsel was ineffective because he failed to present evidence from his supervisor, Harold Stewart, that his VPN connection remained active on a near-continual basis, that Movant had good cause to leave it active for work-related reasons, and that Movant was often in other locations when his VPN was active. ([169] at 5). Movant similarly points out that his counsel was ineffective because he presented evidence of Movant's computer skills, not his language and writing skills. What Movant does not acknowledge is that the jury was aware that Movant was a successful employee of AT&T, a skilled and frequent computer user, and that others had access to his computers. In light of this evidence, the jury was fully capable of evaluating and determining whether Movant wrote the chats.

The Court finds Movant has failed to show either that his counsel's performance was deficient for not introducing additional, cumulative evidence or

that Movant was prejudiced by his counsel's failure to introduce this evidence. The Supreme Court has instructed that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. The Court finds that Movant has failed to meet this standard here. There is every indication that Movant's counsel presented evidence and made arguments at trial, in some manner or another, to accommodate for the points Movant addresses in his Motion to Vacate. To the extent Movant's counsel did not introduce witnesses, evidence, or advance arguments in the manner Movant might have preferred, this alone does not amount to ineffective assistance of counsel as defined by today's applicable precedent. The evidence against Movant was, as noted by the Eleventh Circuit, "substantial," and even if counsel had pursued a different strategy, it is not reasonably probable that the result would have been different.

    B.    Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a

certificate of appealability under 28 U.S.C. 2253(c)." Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted); see also Jones v. United States, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying Slack standard in a § 2255 case). It is not reasonably debatable that Movant's § 2255 Motion is required to be denied. A certificate of appealability is denied.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report and Recommendation [159.1] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Movant's Objections to Magistrate Judge's Report and Recommendation [169] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Movant Michael Asher's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 [152] is **DENIED** and this matter is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this 14th day of June, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE